**DLA PIPER LLP (US)**
MARY C. DOLLARHIDE (Bar No. 138441)
*mary.dollarhide@us.dlapiper.com*
TAYLOR WEMMER (Bar No. 292539)
*taylor.wemmer@us.dlapiper.com*
JOSEPH J. KIM (Bar No. 351049)
*joseph.kim@us.dlapiper.com*
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Tel.:   (858) 677-1400
Fax:   (858) 677-1401

*Attorneys for Defendant*
AMN SERVICES, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ALFONSO GUEVARA, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMN SERVICES, LLC; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. **'25CV2406 AGS MSB**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AMN SERVICES, LLC**<br><br>[*Removed from San Diego County Superior Court Case No. 25CU031504C*]<br><br>Complaint Filed:   June 17, 2025 |

DLA PIPER LLP (US)
SAN DIEGO

1623557274

NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AMN SERVICES, LLC

# **TABLE OF CONTENTS**

**Page**

I. SUMMARY OF ALLEGATIONS AND COMPLIANCE WITH STATUTORY REQUIREMENTS FOR REMOVAL ................................... 1

II. BASIS FOR JURISDICTION ................................................................. 3

III. ORIGINAL JURISDICTION – INDIVIDUAL DIVERSITY ........................... 3

    A.     Complete Diversity of Citizenship Exists Between Plaintiff and AMN. ..................................................................................... 4

    B.     The Amount in Controversy Exceeds $75,000. ........................... 6

           i.     AMN's alleged failure to pay minimum wages for all hours worked .............................................................. 9

           ii.    AMN's alleged failure to provide meal or rest periods ........... 10

           iii.   AMN's alleged failure to indemnify for all necessary expenditures ..................................................... 11

           iv.   AMN's alleged failure to maintain and provide accurate wage statements ................................................ 12

           v.    AMN's alleged failure to timely pay final wages ................... 13

           vi.   Attorneys' fees .............................................................. 14

           vii.  Summary of Plaintiff's Individual Amount in Controversy..... 15

IV. ORIGINAL JURISDICTION – THE CLASS ACTION FAIRNESS ACT ..... 15

    A.     Class Size ................................................................................ 16

    B.     Citizenship of the Parties ......................................................... 16

    C.     The Classwide Amount in Controversy Exceeds $5 Million. ........... 17

           i.     Damages or restitution for allegedly unpaid wages ................. 21

           ii.    Penalties for alleged meal and rest break violations ................ 22

           iii.   Penalties for alleged wage statement violations ..................... 23

           iv.   Alleged waiting time penalties ................................................ 24

           v.    Attorneys' fees ................................................................ 25

           vi.   Summary of CAFA amount in controversy ............................. 26

V. CONCLUSION .............................................................................. 27

DLA Piper LLP (US)
San Diego

-i-

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4

**Cases**

5

*Anthony v. Sec. Pac. Fin. Servs.*,
   75 F.3d 311 (7th Cir. 1996) ................................................................. 7

6

7

*Arias v. Residence Inn*,
   936 F.3d 920 (9th Cir. 2019) ................................................... 17, 18, 19

8

*Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*,
   465 F.2d 489 (9th Cir. 1972) ............................................................... 8

9

10

*Barajas v. Carriage Cemetery Servs. of Cal., Inc.*,
   No. 19-CV-02035-EMC, 2019 WL 2499711 (N.D. Cal. June 17,
   2019) .................................................................................................. 4

11

12

13

*Burns v. Windsor Ins. Co.*,
   31 F.3d 1092 (11th Cir. 1994) ............................................................. 7

14

*Coleman v. Estes Express Lines, Inc.*,
   730 F. Supp. 2d 1141 (C.D. Cal. 2010) ............................................. 12

15

16

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) ........................................................ 3, 7, 17, 18

17

18

*Exxon Mobil Corp. v. Allapattah Servs. Inc.*,
   545 U.S. 546 (2005) ...................................................................... 4, 6

19

*Ferrell v. Express Check Advance of SC LLC*,
   591 F.3d 698 (4th Cir. 2010) ............................................................. 17

20

21

*Fletcher v. Toro Co.*,
   No. 08-CV-2275 DMS, 2009 WL 8405058 (S.D. Cal. Feb. 3, 2009) .............. 25

22

23

*Galt G/S v. JSS Scandinavia*,
   142 F.3d 1150 (9th Cir. 1998) ...................................................... 8, 14

24

25

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ......................................................................... 19

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AMN SERVICES, LLC

*Ibarra v. Manheim Invs., Inc.*,
  775 F.3d 1193 (9th Cir. 2015) ..................................................................... 17, 18

*Johnson v. Columbia Props. Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006) ............................................................................. 5

*Kanter v. Warner-Lambert Co.*,
  265 F.3d 853 (9th Cir. 2001) ............................................................................. 4

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
  199 F. Supp. 2d 993 (C.D. Cal. 2002) ......................................................... 6, 19

*Korn v. Polo Ralph Lauren Corp.*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008) ................................................. 7, 18, 19

*Kroske v. U.S. Bank Corp.*,
  432 F.3d 976 (9th Cir. 2005) ........................................................................... 25

*Lew v. Moss*,
  797 F.2d 747 (9th Cir. 1986) ............................................................................. 5

*Lewis v. Verizon Commc'ns., Inc.*,
  627 F.3d 395 (9th Cir. 2010) ............................................................................. 7

*Lippold v. Godiva Chocolatier, Inc.*,
  No. C 10-00421 SI, 2010 WL 1526441 (N.D. Cal. April 15, 2010) ................. 14

*Mitchell v. Bank of Am. Corp.*,
  No. CV 17-6288 FMO, 2017 WL 4216562 (C.D. Cal. Sept. 21,
  2017) ................................................................................................................ 21

*Mo. State Life Ins. Co. v. Jones*,
  290 U.S. 199 (1933) ......................................................................................... 14

*Muniz v. Pilot Travel Ctrs. LLC*,
  No. CIV S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. Apr.
  30, 2007) .......................................................................................................... 12

*Murphy Bros. v. Michetti Pipe Stringing. Inc.*,
  526 U.S. 344 (1999) ........................................................................................... 2

*Murphy v. Kenneth Cole Prods., Inc.*,
  40 Cal. 4th 1094 (2007) ................................................................................... 22

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ................................................................... 6

*NewGen, LLC v. Safe Cig, LLC*,
   840 F.3d 606 (9th Cir. 2016) ................................................................... 5

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
   No. ED CV 19-0839-DOC (SPX), 2019 WL 7987117 (C.D. Cal.
   June 21, 2019) ..................................................................................... 24, 25

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ................................................................. 26

*Quevedo v. New Albertsons, Inc.*,
   No. SACV 13-1160-JLS, 2015 WL 10939716 (C.D. Cal. May 27,
   2015) ...................................................................................................... 14

*Ramirez v. Carefusion Res. LLC*,
   No. 18-cv-2852-BEN-MSB, 2019 WL 2897902 (S.D. Cal. July 5,
   2019) ...................................................................................................... 17

*Rippee v. Bos. Mkt. Corp.*,
   408 F. Supp. 2d 982 (S.D. Cal. 2005) ...................................................... 7

*Sanchez v. Monumental Life Ins. Co.*,
   102 F.3d 398 (9th Cir. 1996) ............................................................. 7, 18

*Sillah v. Command Int'l Sec. Servs.*,
   No. 14-CV-01960-LHK, 2016 WL 692830 (N.D. Cal. Feb. 22,
   2016) ...................................................................................................... 14

*Simmons v. PCR Tech.*,
   209 F. Supp. 2d 1029 (N.D. Cal. 2002) ............................................ 14, 19

*Singer v. State Farm Mut. Auto. Ins. Co.*,
   116 F.3d 373 (9th Cir. 1997) ................................................................... 7

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................... 26

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
   19 F.3d 514 (10th Cir. 1994) ................................................................... 5

NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AMN SERVICES, LLC

*United Parcel Serv., Inc. v. Super. Ct.*,
    196 Cal. App. 4th 57 (2011) ............................................................. 11

*United Steel v. Shell Oil Co.*,
    602 F.3d 1087 (9th Cir. 2010) ......................................................... 16

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) .................................................... 7, 18

**Statutes**

28 U.S.C.
    § 84(d) ................................................................................................. 3
    § 1332(a) ..................................................................................... 3, 6, 27
    § 1332(a)(1) ........................................................................................ 3
    § 1332(c)(1) ........................................................................................ 5
    § 1332(d)(2) ................................................................... 3, 15, 16, 27
    § 1332(d)(2)(A) ............................................................................... 16
    § 1332(d)(6) ............................................................................... 3, 16
    § 1367 ................................................................................................. 4
    § 1367(a) ........................................................................................ 4, 6
    § 1441(a) ............................................................................................ 3
    § 1441(b)(1) ............................................................................... 6, 16
    § 1446(b)(1) ........................................................................................ 2
    § 1446(c)(2) ..................................................................................... 20
    § 1446(c)(2)(A) ............................................................................... 17
    § 1446(c)(2)(B) ........................................................................... 7, 18
    § 1446(d) ............................................................................................ 2
    § 1453 ............................................................................................... 20
    § 1332(a)(1) ........................................................................................ 1
    § 1332(d)(2) ........................................................................................ 1
    § 1441(a) ............................................................................................ 1
    § 1446 ................................................................................................. 1

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ......................................... 15

Cal. Civ. Proc. Code § 340 .................................................................. 24

Cal. Lab. Code
    § 201 ................................................................................................. 13
    §§ 201-203 ....................................................................................... 13
    § 202 ................................................................................................. 13

DLA PIPER LLP (US)
SAN DIEGO

NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AMN SERVICES, LLC

§ 203 ................................................................................................. 13
§ 203(a) ............................................................................................ 24
§ 203(b) ............................................................................................ 24
§ 226 .............................................................................. 12, 13, 23, 24
§ 226(e) ............................................................................................ 23
§ 226(e)(1) ....................................................................................... 12
§ 226.7 ............................................................................................. 11
§ 226.7(c) ......................................................................................... 22
§ 512 ................................................................................................ 10
§ 2802 .............................................................................................. 11

Class Action Fairness Act, Pub. L. No. 109-2 (enacted Feb. 18, 2005)
      (codified at 28 U.S.C. §§ 1332(d)(2), 1453, and 1711-1715) ............................. 3

**Other Authorities**

Cal. Code Reg., Title 8, section 11090 .................................................... 11

Comm. on the Judiciary, S. Rep. No. 109-14, at 42 (2005) ............................. 18, 19

IWC Wage Order No. 4-2001 ................................................................. 10, 11

United States Constitution Article III .................................................... 4, 6

1  **TO THE CLERK OF THE COURT, PLAINTIFF JORGE ALFONSO**

2  **GUEVARA, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that Defendant AMN Services, LLC ("AMN" or

4  "Defendant") hereby removes this action from the Superior Court of California in

5  and for the County of San Diego (the "Superior Court") to the United States District

6  Court for the Southern District of California.  This removal is pursuant to 28 U.S.C.

7  §§ 1332(a)(1), 1332(d)(2), 1441(a), and 1446 for the reasons stated below:

8                                    **I.**

9      **SUMMARY OF ALLEGATIONS AND COMPLIANCE WITH**

10          **STATUTORY REQUIREMENTS FOR REMOVAL**

11      1.    On or about June 17, 2025, Plaintiff Jorge Alfonso Guevara

12  ("Plaintiff") commenced this action entitled "*JORGE ALFONSO GUEVARA, on*

13  *behalf of himself and others similarly situated, Plaintiff, vs. AMN SERVICES, LLC;*

14  *and DOES 1 to 100, inclusive, Defendants.*" in the Superior Court for the County of

15  San Diego, Case No. 25CU031504C (the "Action").  A true and correct copy of the

16  original Complaint filed in the Action is attached hereto as **Exhibit A**.  Declaration

17  of Taylor Wemmer ("Wemmer Decl."), ¶ 2.

18      2.    In the Complaint, Plaintiff alleges eight causes of action: (1) failure to

19  pay minimum wages for hours worked; (2) failure to pay overtime wages for overtime

20  hours worked or at the proper overtime rate; (3) failure to provide required meal

21  periods; (4) failure to provide required rest periods; (5) failure to indemnify employees

22  for necessary expenditures incurred in discharge of duties; (6) failure to furnish

23  accurate itemized wage statements; (7) failure to pay all wages due to discharged and

24  quitting employees; and (8) unfair and unlawful business practices.  *See id.* at ¶ 3.

25      3.    On August 15, 2025, Plaintiff served AMN with the Summons; a copy

26  of the Complaint; the filed Civil Case Cover Sheet; the Notice of Case Assignment

27  and Case Management Conference; the Notice of E-Filing Requirements and

28  Imaged Documents; and the Superior Court of California, County of San Diego

DLA PIPER LLP (US)
SAN DIEGO

NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AMN SERVICES, LLC

Alternative Dispute Resolution (ADR) Information sheet and blank Stipulation to Use Alternative Dispute Resolution (ADR). *Id.* at ¶ 4. True and correct copies of the Summons; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference; Notice of E-Filing Requirements and Imaged Documents; and the Superior Court of California, County of San Diego Alternative Dispute Resolution (ADR) Information sheet and blank Stipulation to Use Alternative Dispute Resolution (ADR) are attached hereto as **Exhibit B**. *Id.*

4. On August 15, 2025, Plaintiff filed a proof of service of summons. Attached as **Exhibit C** is a is a true and correct copy of the proof of service of summons. *Id.* at 5.

5. Exhibits A-C constitute all papers of which AMN is aware that have been filed with the Superior Court in this Action. *Id.* at ¶ 6.

6. This Notice of Removal is filed within thirty (30) days after AMN was first served with papers in this Action, which consisted of the above-listed documents. The first date on which AMN was served with the summons and a copy of the operative pleading in this Action was August 15, 2025, and this Notice of Removal is being filed on September 15, 2025. *Id.* at ¶ 5. This Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b)(1). *See Murphy Bros. v. Michetti Pipe Stringing. Inc.*, 526 U.S. 344, 347-48 (1999) ("a named defendant's time to remove is triggered by simultaneous service of the summons and complaint . . . but not by mere receipt of the complaint unattended by any formal service").

7. Other than AMN, no other defendants are named in the Complaint, and AMN believes that no other defendant has been served with process in this Action. Wemmer Decl., ¶ 7.

8. Notice of this removal will be given promptly to Plaintiff and the Superior Court of the State of California, County of San Diego, pursuant to 28 U.S.C. § 1446(d).

9.     Venue of this Action is properly laid in this District because the Superior Court is located within this District.  *See* 28 U.S.C. §§ 84(d), 1441(a).

## II.

## BASIS FOR JURISDICTION

10.    This Court has original jurisdiction over this civil action pursuant to the provisions of 28 U.S.C. § 1332(a)(1) because the amount in controversy for the named Plaintiff exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and the Action is between citizens of different States.

11.    This Court also has original jurisdiction over this Action pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. §§ 1332(d)(2), 1453, and 1711-1715), because: (1) the matter involves 100 or more potential class members; (2) the named class representative is a citizen of a state different from the Defendant; and (3) the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of costs and interest.  28 U.S.C. §§ 1332(d)(2), (d)(6).

12.    As set forth below, this case meets all of the requirements for removal on both grounds and is timely and properly removed by the filing of this Notice of Removal.

13.    In *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014), the United States Supreme Court held that courts must apply the same liberal rules to removal allegations as to matters of pleading.

## III.

## ORIGINAL JURISDICTION – INDIVIDUAL DIVERSITY

14.    The diversity of citizenship statute provides in pertinent part that

[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States . . . .

28 U.S.C. § 1332(a).

NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AMN SERVICES, LLC

15.    As set forth below, both requirements are satisfied here.  First, complete diversity of citizenship exists between Plaintiff and AMN.  Second, the amount in controversy is satisfied because the amount in controversy with respect to Plaintiff's individual claims exceeds $75,000, exclusive of interest and costs. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) ("if a named plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members"); *Barajas v. Carriage Cemetery Servs. of Cal., Inc.,* No. 19-CV-02035-EMC, 2019 WL 2499711, at *6 (N.D. Cal. June 17, 2019) ("so long as there is subject matter jurisdiction over Ms. Barajas's claims, then the Court has supplemental jurisdiction over the other plaintiffs' claims").

16.    Stated otherwise, where diversity jurisdiction exists as to any claim, federal courts may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  In a class action, if there is complete diversity and the named plaintiff's claim satisfies the $75,000 threshold, the district court may exercise supplemental jurisdiction over claims by the unnamed putative class members in lesser amounts, provided that all claims arise out of the same Article III case or controversy.  Thus, because Plaintiff's claims satisfy the $75,000 threshold here, this Court may exercise supplemental jurisdiction over the proposed class claims, because they arise out of the same case and controversy.  *See Exxon Mobil Corp. v. Allapattah Servs. Inc.,* 545 U.S. 546, 549 (2005).

**A.    Complete Diversity of Citizenship Exists Between Plaintiff and AMN.**

17.    There is diversity of citizenship between Plaintiff and AMN, as the two parties are citizens of different states.

///

18.    Plaintiff was, at the time of filing this action, and still is on information and belief, a citizen of the State of California.  *See* Exhibit A ("Compl."), ¶ 3 ("At all times mentioned herein, the currently named Plaintiff is and was a resident of California and was employed by Defendants in the State of California within the four (4) years prior to the filing of this Complaint.").  Citizenship of a natural person is established by domicile, which in turn is established by physical presence and an intent to remain indefinitely.  *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

19.    Here, Plaintiff's Complaint establishes that he had, and continues to have, a physical presence in the state of California, with an intent to remain indefinitely.  *See* Compl., ¶ 3 ("At all times mentioned herein, the currently named Plaintiff is and was a resident of California . . . .").  There is no indication that Plaintiff is a citizen of a state other than California.  *See id.*

20.    For purposes of diversity jurisdiction, a limited liability company (LLC) "is a citizen of every state of which its owners/members are citizens, not the state in which it was formed or does business." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016) (quotations omitted and citing *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)).  A corporation on the other hand, is deemed to be a citizen of the state in which it has been incorporated and where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

21.    AMN Services, LLC is a limited liability company wholly owned by its sole member, the corporation AMN Healthcare, Inc.  *See* Richardson Decl., ¶ 3. AMN Healthcare, Inc. is incorporated in Nevada and has a principal place of business in Texas.  *Id.*  Therefore, AMN Healthcare, Inc. is a citizen of Nevada and Texas but not California.  Consequently, AMN Services, LLC is also a citizen of Nevada and Texas but not California.

22. Any potential "Doe" defendants are disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1). *See also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690–91 (9th Cir. 1998). In addition, there are no allegations in the Complaint with respect to the potential "Doe" defendants. *See* Compl., ¶¶ 6-8.

23. Thus, the parties are of diverse citizenship, as Plaintiff is a citizen of California and AMN is a citizen of Nevada and Texas. Accordingly, the complete diversity requirement of 28 U.S.C. § 1332(a) is satisfied.

**B.     The Amount in Controversy Exceeds $75,000.**

24. As stated above, if there is complete diversity and the named plaintiff's claims alone satisfy the $75,000 threshold, the district court may exercise supplemental jurisdiction over claims by the putative class members in lesser amounts provided that all claims arise out of the same Article III case or controversy. *See* 28 U.S.C. § 1367(a); *Exxon Mobil*, 545 U.S. at 549. Here, Plaintiff Guevara's claims alone satisfy the $75,000 threshold. Thus, this Court may exercise supplemental jurisdiction over all claims encompassed by the Action.

25. Plaintiff's Complaint is silent as to the total amount of damages; however, a reasonable reading of Plaintiff's Complaint is sufficient to indicate that the sought-after relief exceeds the $75,000 threshold required under 28 U.S.C. section 1332(a).

26. AMN denies the validity and merits of the entirety of Plaintiff's alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom. However, for purposes of removal only, and without conceding that Plaintiff is entitled to any damages or penalties whatsoever, it is readily apparent that Plaintiff's claims establish an amount in controversy well in excess of the jurisdictional minimum of $75,000.

27. For purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations of the Complaint and presume that Plaintiff will prevail on his claims. *Kenneth Rothschild*

*Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the "amount in controversy analysis presumes that 'plaintiff prevails on liability'")). Put differently, the "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

28.    "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee,* 574 U.S. at 87.  If the plaintiff or the court questions a defendant's amount in controversy allegation, removal is proper where the "district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold.  28 U.S.C. § 1446(c)(2)(B); *see also Singer v. State Farm Mut. Auto. Ins. Co*., 116 F.3d 373, 376 (9th Cir. 1997).

29.    "Under [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  This "burden is not daunting, as courts recognize that under this standard, a removing defendant is *not* obligated to research, state, and prove the plaintiffs' claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted and emphasis in original); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

30.    Economic damages, non-economic damages, general damages, attorneys' fees, punitive damages, and injunctive relief are all included in determining the amount in controversy. *See Anthony v. Sec. Pac. Fin. Servs.*, 75

F.3d 311, 315 (7th Cir. 1996) (prayer for actual and punitive damages included in determining amount in controversy); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (prayer for attorneys' fees included in determining the amount in controversy where potentially recoverable by statute). Moreover, all claims alleged by Plaintiff can be aggregated to meet the minimum jurisdictional amount. *See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).

31. Plaintiff's Complaint alleges that for at least four years prior to the filing of the Complaint, AMN failed to pay at least minimum wage for all hours worked (Compl., ¶¶ 13-17, 46-53); failed to pay overtime wages for overtime hours worked or at the proper overtime rate (*id.* at ¶¶ 18-23, 54-64); failed to provide meal breaks (*id.* at ¶¶ 24-28, 65-72); failed to provide rest breaks (*id.* at ¶¶ 29-33, 73-80); failed to indemnify employees for necessary expenditures incurred in discharge of duties (*id.* at ¶¶ 34-38, 81-88); and engaged in unfair and unlawful business practices (*id.* at ¶¶ 168-171). The Complaint also alleges that AMN failed to furnish accurate itemized wage statements for at least one year prior to the filing of the Complaint (*id.* at ¶¶ 39-40, 147-156) and failed to pay all wages due to discharged and quitting employees (*id.* at ¶¶ 41-43, 157-167) for at least three years prior to the filing of the Complaint. Based on these contentions, the amount in controversy with respect to Plaintiff exceeds the $75,000 requirement.

32. Plaintiff was employed as an Account Manager with AMN from April 26, 2021, to March 20, 2025. *See* Richardson Decl., ¶ 4. Plaintiff was scheduled to work, and would normally work, five days per week for 8 hours per day during his employment with AMN. *Id.* at ¶ 5. Plaintiff filed his complaint on June 17, 2025, and alleged a four-year statute of limitations. *See* Compl. Therefore, the workweeks at issue for Plaintiff are from June 17, 2021 (the start of the limitations period) to March 20, 2025 (his termination date). Therefore, Plaintiff worked approximately 196 workweeks while employed at AMN.

i.    **AMN's alleged failure to pay minimum wages for all hours worked**

33.    In the Complaint, Plaintiff alleges that AMN did not pay wages at the applicable minimum wage for all hours worked, including time spent (i) "booting up computers and remotely setting up [AMN's] computer system prior to being able to clock in," and (ii) time spent clocked out for meal periods while employees "continue[d] to work through their off-the-clock meal breaks without being paid for that time."  Compl., ¶15.

34.    The state minimum wage was $14.00/hour in 2021, attributable to 28 weeks of Plaintiff's employment; $15.00/hour in 2022, attributable to 52 weeks of Plaintiff's employment; $15.50/hour in 2023, attributable to 52 weeks of Plaintiff's employment; $16.00/hour in 2024, attributable to 52 weeks of Plaintiff's employment; and $16.50/hour in 2025, attributable to 13 weeks of Plaintiff's employment.

35.    Even if, arguendo, Plaintiff spent no more than a combined five minutes each shift booting up and working off-the-clock during meal breaks for a total of 25 minutes a week (5 minutes per day x 5 days a week), this conservative estimate places at least **$1,260.21** in controversy according to the following calculation:[1]

-    2021: $14.00/hour x (25 minutes/week x 28 weeks ÷ 60 minutes) = $163.33
-    2022: $15.00/hour x (25 minutes/week x 52 weeks ÷ 60 minutes) = $325.00
-    2023: $15.50/hour x (25 minutes/week x 52 weeks ÷ 60 minutes) = $335.83
-    2024: $16.00/hour x (25 minutes/week x 52 weeks ÷ 60 minutes) = $346.67
-    2025: $16.50/hour x (25 minutes/week x 13 weeks ÷ 60 minutes) = $89.38

    **Total = $1,260.21**.

---

[1] If less conservative estimates of unpaid work time are applied, such as Plaintiff having worked through just one 30-minute unpaid meal period each week, the amount in controversy for this claim more than doubles.

### ii.    AMN's alleged failure to provide meal or rest periods

36.    With respect to meal periods, Plaintiff alleges that AMN "employed policies, practices, and/or procedures that resulted in [its] failure to authorize or permit meal periods to Plaintiff," and also failed to pay:

> a meal period premium wage of one (1) additional hour of pay at [the employee's] regular rate of compensation for each workday the employees did not receive all legally required and compliant meal periods.

Compl., ¶¶ 26, 27.  Plaintiff further alleges that these meal period violations were standard practice during his employment with AMN.  *See id.* at ¶ 24 (AMN "often employed" employees "for shifts longer than five (5) hours in length and shifts longer than ten (10) hours in length"), ¶ 69 (AMN "lacked a policy and procedure for compensating" meal period premium wages).

37.    With respect to rest periods, Plaintiff alleges that AMN "employed policies, practices, and/or procedures that resulted in [its] failure to authorize or permit all legally required rest periods to Plaintiff," and also failed to pay

> a rest period premium wage of one (1) additional hour of pay at [the employee's] regular rate of compensation for each workday the employees did not receive all legally required and compliant rest periods.

*Id.* at ¶¶ 31, 32.  Plaintiff further alleges that these rest period violations were standard practice during his employment with AMN.  *See id.* at ¶ 29 (AMN "often employed" employees "for shifts of at least three-and-a-half (3.5) hours"), ¶ 76 (employees "regularly worked shifts of more than three-and-a-half (3.5) hours"), ¶ 77 (AMN "lacked a policy and procedure for compensating" rest period premium wages).

38.    Under California Labor Code section 512 and IWC Wage Order ("Wage Order") No. 4-2001(11), an employee who works more than five (5) hours per day must be provided a meal period of at least thirty (30) minutes.  California Labor Code section 512 and Wage Order No. 4-2001(11) also provide that

employees who work more than ten (10) hours per day must be provided a second meal period of not less than thirty (30) minutes.  Pursuant to Wage Order No. 4-2001(12) and California Code of Regulations, Title 8, section 11090, an employer must provide a ten (10) minute rest period per four (4) hours of work or major fraction thereof.  Under California Labor Code section 226.7, if an employer fails to provide an employee a meal or rest period, the employer shall pay the employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided.  If an employer fails to provide both the rest period and the meal period, the employee is entitled to recover two (2) hours of pay at the employee's regular rate of compensation.  *United Parcel Serv., Inc. v. Super. Ct.*, 196 Cal. App. 4th 57, 69 (2011).

39.    Plaintiff's average hourly rate of pay was $31.18/hour. *See* Richardson Decl. ¶ 6. Plaintiff also was scheduled to work, and did normally work, 5 days a week for approximately 8 hours a day. *See id*. ¶ 5. Based on Plaintiff's allegations that AMN failed to provide him any compliant meal or rest periods, these purported violations place a total of **$61,112.80** in controversy:

- Meal Period Violations: 196 workweeks x 1 meal period violation per day x 5 days a week x $31.18/hour (average hourly rate) = $30,556.40
- Rest Period Violations: 196 workweeks x 1 rest break violation per day x 5 days a week x $31.18/hour (average hourly rate) = $30,556.40

**Total = $61,112.80**

### iii.    AMN's alleged failure to indemnify for all necessary expenditures

40.    Plaintiff claims that AMN required employees "who work remotely to use or purchase their own tools and/or resources in order to work . . . including, but not limited to cellphone and internet usage[.]"  Compl., ¶ 83.  California Labor Code section 2802 requires employers to reimburse employees for all "necessary

expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties[.]"

41.    Plaintiff does not estimate how much he believes he is owed for the alleged cellphone and internet usage incurred while he was employed with AMN. But using a very conservative estimate that Plaintiff incurred just $5 per month for cellphone-related expenditures (and ignoring internet usage for now), this allegation places at least **$225.00** in controversy ($5/month for 45 months of employment).

### iv.    AMN's alleged failure to maintain and provide accurate wage statements

42.    Plaintiff alleges that AMN failed to maintain and provide accurate wage statements in violation of California Labor Code Section 226 as a result of other purported Labor Code violations described in the Complaint.  Compl., ¶ 150. Plaintiff seeks penalties for a one-year period prior to the filing of the Complaint. *See id.* at ¶ 44(f).

43.    California Labor Code section 226 provides for a penalty in the event that an employee suffers an injury as a result of a wage statement that violates this section.  If Plaintiff can prove that AMN violated California Labor Code section 226, which AMN denies, the penalty for Plaintiff and each putative class member is $50 for the initial pay period and $100 for each additional pay period, with the total penalty not exceeding $4,000 per person.  Cal. Lab. Code § 226(e)(1).

44.    Courts assume a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.  *See, e.g.*, *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. Apr. 30, 2007) ("Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have

alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.").

45.    Here, Plaintiff does not allege any precise calculation of penalties owed, and further claims that any one of a number of Labor Code violations—including unpaid minimum wages and meal or rest period premiums—results in California Labor Code section 226 penalties.  *See* Compl., ¶ 150.

46.    Plaintiff's employment covers approximately 40 weeks beginning June 17, 2024, one year prior to the filing of his Complaint, and therefore he received approximately 20 paystubs.  *See* Richardson Decl., ¶ 7.  Plaintiff has put approximately **$1,950.00** in controversy with this claim (($50 x 1 pay period) + ($100 x 19 pay periods)).

### v.    AMN's alleged failure to timely pay final wages

47.    Plaintiff claims AMN violated California Labor Code sections 201-203.  *See* Compl., ¶¶ 41-43, 157-167.  Specifically, Plaintiff alleges that AMN failed to pay "all wages earned and unpaid prior to separation of employment, in accordance with either Labor Code section 201 or 202," and that Defendant further

> committed direct violations of Labor Code section 203, through their policies, practices, and/or procedures, including but not limited to failing to pay Plaintiff and other similarly situated employees' final wages upon their separation from Defendant.

*Id.* at ¶¶ 160-61.

48.    Plaintiff's last day of work with AMN was March 20, 2025, and he worked an average of eight hours per day.  Richardson Decl., ¶¶ 4-5.  If Plaintiff somehow prevails on his unpaid wages claim or claims for unpaid meal/rest period penalties, he would not have been paid all wages due at termination.  Thus, at $31.25/hour (Plaintiff's rate of pay at termination), and averaging eight hours worked per day, thirty days' wages for Plaintiff would place **$7,500.00 (30 days x 8 hours a day x $31.25/hour)** in controversy for waiting time penalties if he proves that AMN willfully failed to pay all wages due at termination, which AMN denies.

### vi.    Attorneys' fees

49.    Plaintiff also seeks attorneys' fees pursuant to various provisions of the California Labor Code.  *See* Compl., ¶¶ 1, 53, 64, 88, 156, 167, and prayer for relief.  Such fees may be included in determining the amount in controversy where recoverable by statute.  *Mo. State Life Ins. Co. v. Jones,* 290 U.S. 199, 201-02 (1933); *Galt*, 142 F.3d at 1156.  In the Ninth Circuit, future attorneys' fees through trial can be considered as well as attorneys' fees incurred through the filing of the Complaint.  *Galt*, 142 F.3d at 1155-56; *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("The Ninth Circuit clearly considers attorneys' fees when assessing amount in controversy. Such fees necessarily accrue until the action is resolved.") (internal citation omitted).

50.    Attorneys' fees awards can be significant in wage and hour cases and often exceed the amount of the underlying claims.  *See, e.g.*, *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *3-4 (N.D. Cal. April 15, 2010) (denying plaintiff's motion to remand, finding that anticipated attorneys' fees were sufficient to exceed the $75,000 threshold where plaintiff's wage and hour claims totaled $38,747); *Sillah v. Command Int'l Sec. Servs.*, No. 14-CV-01960-LHK, 2016 WL 692830, at *3 (N.D. Cal. Feb. 22, 2016) (awarding $62,579.30 in attorney's fees in a single-plaintiff overtime case); *Quevedo v. New Albertsons, Inc*., No. SACV 13-1160-JLS (JPRx), 2015 WL 10939716, at *3, 7 (C.D. Cal. May 27, 2015) (awarding $358,676.40 in attorneys' fees in a single plaintiff wage and hour case, where plaintiff recovered $42,002 in meal period premiums and overtime wages).

51.    Accordingly, **$18,012.00** (25% of $72,048.01, the total amount in controversy for the claims calculated above) is an extremely conservative estimate of attorneys' fees in controversy for Plaintiff—and a fee request by his counsel would likely be significantly more if he were to prevail in this action.  In any event, even merely a 25% attorneys' fee, which is common in wage and hour cases, would be sufficient to bring the total amount in controversy above the jurisdictional requirement.

### vii.    Summary of Plaintiff's Individual Amount in Controversy

52.    By the claims asserted in this case, the preponderance of the evidence demonstrates that Plaintiff is seeking well in excess of $75,000 in damages:

| Plaintiff's Claim | Amount in Controversy |
|---|---|
| Failure to Pay Minimum Wage for All Hours Worked | $1,260.21 |
| Meal and Rest Break Premiums | $61,112.80 |
| Failure to Reimburse Business Expenses | $225.00 |
| Wage Statement Penalties | $1,950.00 |
| Waiting Time Penalties | $7,500.00 |
| Attorneys' Fees | $18,012.00 |
| TOTAL | $90,060.01 |

53.    Based on the foregoing analysis, diversity removal is proper. Specifically, estimated conservatively, Plaintiff's potential recovery on his claims for unpaid minimum wages, meal period and rest break premiums, business reimbursement claims (limited to cell phone costs), failure to provide accurate wage statements, waiting time penalties, and attorneys' fees undisputedly surpasses the $75,000 amount in controversy threshold.  Moreover, these calculations do not even take into account Plaintiff's numerous other claims, including, *inter alia*, failure to pay all overtime wages, reimbursement of internet costs or any other work-related expenses in addition to cell phone costs, and his unfair business practices claim under California Business and Professions Code sections 17200, *et seq.*

### IV.

### ORIGINAL JURISDICTION – THE CLASS ACTION FAIRNESS ACT

54.    This lawsuit is a civil action over which this Court also has original jurisdiction pursuant to the CAFA.  Accordingly, this Action may also be removed pursuant to 28 U.S.C. § 1332(d)(2).

55.    Pursuant to CAFA, federal district courts have original jurisdiction over a class action if: (1) it involves 100 or more potential class members; (2) any class

member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of costs and interest.  *See* 28 U.S.C. §§ 1332(d)(2), (d)(6).

### A.    Class Size

56.    Plaintiff proposes one general putative class and multiple subclasses. The general putative class consists of "current, former, and/or future employees of [AMN] as direct employees as well as temporary employees employed through temp agencies who work as hourly non-exempt employees."  Compl., ¶ 3.

57.    The Complaint does not allege any specific number of members in any of the proposed classes.

58.    Between June 17, 2021, and August 29, 2025, AMN employed approximately 335 non-exempt corporate employees in California ("putative class members"). *See* Richardson Decl., ¶ 8.  Therefore, for purposes of removal pursuant to CAFA, there are well beyond the required 100 members in the proposed class.

### B.    Citizenship of the Parties

59.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A); *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that "[t]o achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the . . . minimal diversity [requirement]" in 28 U.S.C. § 1332(d)(2)).

60.    Here, and as already detailed above, Plaintiff is a citizen of California and all "Doe" defendants are disregarded for purposes of removal.  *See* § III(A), *supra*; Compl., ¶ 3; 28 U.S.C. § 1441(b)(1).

61.    AMN, the only named defendant, is not a citizen of the State of California.  For the purposes of determining the citizenship of an LLC under

CAFA, federal courts have found that such entities qualify as "unincorporated association[s]" under § 1332(d)(10).  *See Ramirez v. Carefusion Res. LLC*, No. 18-cv-2852-BEN-MSB, 2019 WL 2897902 at *2 (S.D. Cal. July 5, 2019) (holding that LLCs are to be treated as unincorporated associations for the purposes of CAFA); *see also Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 699-700 (4th Cir. 2010) ("for purposes of determining subject matter jurisdiction under the Class Action Fairness Act of 2005 . . . a limited liability company is an 'unincorporated association' as that term is used in 28 U.S.C. § 1332(d)(10)").  Therefore, under CAFA, an LLC is a citizen of the State under whose laws it is organized and the State where it has its principal place of business.  *See id.*

62.    AMN is an LLC organized under the laws of North Carolina and has a principal place of business in Texas.  *See* Richardson Decl., ¶ 3.  Therefore, for purposes of CAFA jurisdiction, AMN is a citizen of North Carolina and Texas, but not of California.

63.    Because Plaintiff is a citizen of California and the sole defendant AMN is a citizen of a different state (in this case, North Carolina and Texas), the citizenship requirements for CAFA purposes have been met.

**C.    The Classwide Amount in Controversy Exceeds $5 Million.**

64.    A notice of removal

may assert the amount in controversy if the initial pleading seeks: (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded[.]"

28 U.S.C. § 1446(c)(2)(A).  "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  *Dart Cherokee*, 574 U.S. at 87.  "[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements."  *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra v. Manheim Invs.,*

DLA PIPER LLP (US) SAN DIEGO

*Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015); *see also Dart Cherokee*, 574 U.S. at 89 (a defendant seeking to remove a case under CAFA need only include in the notice of removal a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

65.    If the plaintiff or the court questions a defendant's amount in controversy allegation, removal is proper where the "district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. 28 U.S.C. § 1446(c)(2)(B). The defendant's showing on the amount in controversy may rely on "reasonable assumptions" to show that the amount at issue clears the $5 million threshold to confer federal jurisdiction. *See Arias*, 936 F.3d at 922.

~~66.~~    "Under [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the threshold. *Sanchez*, 102 F.3d at 404. This "burden is not daunting, as courts recognize that under this standard, a removing defendant is *not* obligated to research, state, and prove the plaintiffs' claims for damages." *Korn*, 536 F. Supp. 2d at 1204–05 (internal quotations omitted and emphasis in original); *see also Valdez*, 372 F.3d at 1117. "[A]ssumptions made [as] part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias*, 936 F.3d at 927 (finding that the district court erred in imposing "a requirement that [the employer] prove it actually violated the law at the assumed rate") (citing *Ibarra*, 775 F.3d at 1199).

67.    Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Comm. on the Judiciary, S. Rep. No. 109-14, at 42 (2005).

///

68.    Any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  As stated by the Judiciary Committee, "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case… Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* at 42-43

69.    In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth*, 199 F. Supp. 2d at 1001. The ultimate inquiry is, therefore, what amount is "put in controversy" by the plaintiff's complaint or other papers, not what the defendant will actually owe for the number of violations that occurred, if any.  *Korn*, 536 F. Supp. 2d at 1205.

70.    The jurisdictional minimum may be satisfied by claims for special and general damages, attorneys' fees and punitive damages.  *Simmons*, 209 F. Supp. 2d at 1031.  Also, in actions for declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). Finally, the Ninth Circuit has held that when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.  *Arias*, 936 F.3d at 922.

71.    Thus, AMN's amount in controversy allegations should be accepted here unless challenged by the Court or Plaintiff.  Further, even if challenged, because the Complaint in this action fails to plead a specific amount of damages and the amount of damages is vague and ambiguous, AMN need only show that the amount in controversy requirement has been met for CAFA jurisdiction by a

preponderance of the evidence.  28 U.S.C. §§ 1446(c)(2) and 1453 (applying section 1446 to CAFA).  The calculations for the amount in controversy required for removal under CAFA jurisdiction are detailed below.

72.    In the Complaint, Plaintiff pursues eight putative class claims under various provisions of California's Labor Code and Unfair Competition Law.  *See generally Complaint*.  Plaintiff seeks to recover compensatory damages, restitution, meal and rest period compensation, penalties, injunctive relief, and attorneys' fees and costs on behalf of himself and the putative class.  *See generally id.*

73.    Based on a review of AMN's employment records, AMN employed approximately 335 putative class members at some point between June 17, 2021 (the start of the limitations period), and August 29, 2025. *See* Richardson Decl. ¶ 8. Additionally, putative class members:

- worked approximately 36,342 workweeks between June 17, 2021 and August 29, 2025
- were paid at an average rate of $25.45/hour
- worked an average of 4.59 days per workweek
- worked an average of 8.19 hours per day
- worked approximately 3,970 pay periods between June 17, 2024 and August 29, 2025

*See id.* ¶ 9.

Approximately 111 of the putative class members ended their employment with AMN between June 17, 2022 and August 1, 2025. *See id.* ¶ 11.

74.    Based on employment records and the Complaint's allegations, AMN is able to establish that the alleged amount in controversy exceeds the jurisdictional threshold.[2]

---

[2] AMN acknowledges only that the amount put in controversy by Plaintiff's allegations exceeds $5,000,000 and in no way concedes that of any of Plaintiff's allegations have merit, that any class proposed by Plaintiff may properly be

### i.    Damages or restitution for allegedly unpaid wages

75.    The Complaint's first and second causes of action allege unpaid minimum and overtime wages, which are subject to a three-year statute of limitations. *See* Compl., ¶¶ 13-23, 46-64.  The Complaint's eighth cause of action alleges unfair competition, including claims for "restitution of all wages and other monies rightfully belonging to [Plaintiff and putative class members]" which are subject to a four-year statute of limitations. *Id.* at ¶ 171.  The Complaint fails to allege when or how often work time was unpaid, but Plaintiff has alleged that remote workers were not paid minimum wages for boot up time at the start of each shift, and that employees were not paid overtime for working more than eight hours in a day or more than 40 hours in a week. *Id.* at ¶¶ 15(a), 22.  Because putative class members worked on average 8.19 hours per day, AMN reasonably assumes that any allegedly unpaid boot up time also incurs overtime violations (California requires payment of daily overtime). *See* Richardson Decl., ¶ 9. However, for the purposes of estimating the amount in controversy, AMN will take a more conservative approach and only assume that off-the-work incurred was unpaid minimum wages.

76.    Alleged lost wages are calculated up to the date of removal. *Mitchell v. Bank of Am. Corp.*, No. CV 17-6288 FMO (PLAx), 2017 WL 4216562, at *2 (C.D. Cal. Sept. 21, 2017).

77.    During the four years preceding the filing of the Complaint, there were approximately 36,342 workweeks worked by putative class members.  Richardson Decl., ¶ 9.  For the purposes of this calculation, AMN will conservatively only use the lowest minimum wage at issue during the statutory period ($14/hour in 2021). If putative class members should have been but were not paid for just five minutes of

certified, or that Plaintiff is entitled to relief in that amount or any amount whatsoever.  AMN expressly denies any allegations of wrongdoing and reserves all rights to assert any and all applicable defenses in this matter.

daily work (a reasonable estimate of the amount of time it takes to boot up a computer), then the amount in controversy for unpaid minimum wages (as damages or restitution) would be approximately $211,995.[3]

### ii.    Penalties for alleged meal and rest break violations

78.    The Complaint's third and fourth causes of action allege violations of California's meal and rest period requirements.  The Complaint fails to allege when or how often such violations occurred, but broadly asserts that employees were "*requir[ed]*" to clock out for meal breaks while continuing work and that those workers also "*regularly* worked" rest-period eligible shifts, and that Defendant had "policies, practices, and/or procedures that resulted in their failure to authorize or permit all legally and compliant rest periods."  Compl., ¶¶ 26(a), 24, 29, 76 (emphasis added).  Further, despite these purportedly systematic violations, Plaintiff alleges that AMN "lacked a policy and procedure for compensating" meal and rest period premium wages.  *Id.* at ¶¶ 69, 77.

79.    California Labor Code § 226.7(c) provides an employee an additional hour of pay for each day meal breaks are not provided in compliance with applicable entitlements under California law.  California Labor Code § 226.7(c) also provides an employee an additional hour of pay for each day rest breaks are not authorized and permitted in compliance with applicable entitlements under California law.  The applicable statute of limitations for violations of meal and rest break requirements is three years.  *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1114 (2007).  This statute of limitations is extended to four years on account of the Complaint's eighth cause of action for unfair competition, including claims for "restitution of all wages and other monies rightfully belonging to [Plaintiff and putative class members]" which are subject to a four-year statute of limitations.  Compl. at ¶ 171.

---

[3] (25 minutes of off-the-clock work per week x 36,342 workweeks) / 60 minutes = 15,142.50 hours x $14/ hour = $211.995.

80.     During the four years preceding the filing of the Complaint, there were approximately 36,342 workweeks worked by putative class members. *See* Richardson Decl., ¶ 9. Further, putative class members worked an average of 8.19 hours per day, which triggers an obligation by the employer to provide at least one meal period and two rest breaks under California law. Because Plaintiff alleges that AMN violated meal and rest laws, as a matter of "policy, practice, and/or procedures," assuming that all putative class members worked an average of 4.59 days per workweek (AMN will use 4 days a week for the purpose of this analysis), using the average hourly rate of pay of $25.45/hour, and further assuming meal and rest period violations occurred each day based on Plaintiff's allegations in the complaint, the amount in controversy for alleged meal period violations reasonably would approximate $3,699,615.60[4] and the amount in controversy for alleged rest break violations reasonably would approximate an additional $3,699,615.60.[5] Together, these allegedly systematic meal and rest break claims total **$7,399,231.2**.

### iii.     Penalties for alleged wage statement violations

81.     The Complaint's sixth cause of action alleges inaccurate wage statements and states that AMN:

> failed to provide accurate wage and hour statements to him and other similarly situated employees who were subjected to [AMN's] control for uncompensated time and who did not receive all their earned wages (including minimum wages, overtime wages, meal period premium wages, and/or rest period premium wages), in violation of Labor Code section 226.

Compl., ¶ 40.  California Labor Code § 226(e) provides an employee a minimum of $50.00 for the initial pay period in which a violation occurs, and $100.00 for subsequent violations, up to a maximum penalty of $4,000.00 per employee.  The

---

[4] Meal Period Violations: 4 days a week x 36,342 workweeks x 1 violation per day x $25.45/hour = $3,699,615.60
[5] Rest Period Violations: 4 days a week x 36,342 workweeks x 1 violation per day x $25.45/hour = $3,699,615.60

NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT AMN SERVICES, LLC

statute of limitations for penalties under California Labor Code § 226 is one year. Cal. Civ. Proc. Code § 340.

82.    During the one year preceding the filing of the Complaint (June 17, 2024) to August 29, 2025, there were approximately 3,970 pay periods.  Plaintiff alleges that AMN (i) failed to pay minimum wages for *every* remote worker and (ii) failed to pay meal and rest premium wages violations because Defendant "lacked a policy and procedure for compensating" those premiums even though employees were "*requir[ed]*" to clock out for meal breaks while continuing work and those workers also "*regularly* worked" rest-period eligible shifts.  *See e.g.,* Compl., ¶¶ 15(a), 26(a), 24, 29, 69, 76, 77 (emphases added).  Accordingly, AMN reasonably assumes that Plaintiff alleges violations for each pay period during this time period. However, for the purposes of this calculation, AMN will assume that each violation was an "initial" violation only and apply only the $50 penalty rate.  Therefore, the amount in controversy from the claim for wage statements reasonably would approximate an additional **$198,500**[6].  *See Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. ED CV 19-0839-DOC (SPX), 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) (assuming 100% of wage statement penalties appropriate to establish the amount in controversy for CAFA removal because defendant would only have caused a "single violation per pay period for all wage statements to be inaccurate").

### iv.    Alleged waiting time penalties

83.    The Complaint's seventh cause of action alleges that putative class members were not timely paid at the end of their employment.  Such an employee's wages "continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to 30 days.  Cal. Lab. Code § 203(a). The statute of limitations for waiting time penalties claims is three years.  Cal. Lab. Code § 203(b).

---

[6] 3,970 pay periods x $50 = $198,500

84.   As described above, Plaintiff claims that AMN "fail[ed] to pay Plaintiff and others similarly situated employees' final wages upon their separation[.]" Compl., ¶ 42.  Therefore, even if Plaintiff and putative class members can establish even a small amount of unpaid time not provided at the end of their employment, putative class members could receive the full 30 days' worth of penalties.  *See Noriesta*, 2019 WL 7987117, at *4 (assuming 100% of waiting time penalties appropriate to establish the amount in controversy for CAFA removal because plaintiff's complaint alleged "'pattern and practice' of wage violations, including failure to pay overtime or compensate class members for meal and rest breaks").

85.   There are approximately 111 putative class members who ended their employment with AMN at some point between June 17, 2022 and August 1, 2025 (more than 30 days prior to the removal of Plaintiff's complaint).  Richardson Decl., ¶ 11.  Because putative class members worked an average of 8.19 hours per day while employed by AMN (AMN will use 8 hours per day to be more conservative), and the average pay rate was $25.45/hour, the amount in controversy from the claim for waiting-time penalties reasonably would approximately be **$677,988**.[7]

### v.   Attorneys' fees

86.   Plaintiff also seeks attorneys' fees on behalf of himself and each proposed class member (Compl., *in passim*) which may be included when determining the amount in controversy.  *Fletcher v. Toro Co.*, No. 08-CV-2275 DMS (WMc), 2009 WL 8405058, at *3 (S.D. Cal. Feb. 3, 2009) (citing *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)) (requirement may be satisfied "by claims of . . . attorney's fees (if authorized by statute or contract)").  The Ninth Circuit has set an attorneys' fee benchmark at 25 percent for common fund cases, as

---

[7] 30 days x 111 terminated employees x 8 hours per day x $25.45 = **$677,988**.

a certified class action would likely be deemed.  *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *see also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing to 3 Newberg on Class Actions, § 14.03, which explains that 20-30 percent is a usual range for a common fund award for attorneys' fees).  Even if one were to apply the lower end of that range (20%) to the amount-in-controversy based on the above causes of action alone, the potential attorneys' fees would be approximately $1,697,542.84 (20% of $8,487,714.20, the total of all claims listed above).

### vi.    Summary of CAFA amount in controversy

87.    The above analysis does not take into account Plaintiff's claim on behalf of himself and other putative class members that AMN failed to provide reimbursement for all business expenses.

88.    The claims asserted in the Complaint on behalf of Plaintiff and the potential class members for meal and rest period violations, unpaid minimum wage and unpaid overtime, waiting time penalties, and wage statement penalties put in controversy an amount well over the $5,000,000.00 jurisdictional threshold, even without including attorneys' fees.  A conservative calculation of the amount put in controversy in this case is as follows:

| Class Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages | $211,995 |
| Meal Period Violations (assuming four violations per week) | $3,699,615.60 |
| Rest Period Violations (assuming four violations per week) | $3,699,615.60 |
| Wage Statement Penalties | $198,500 |
| Waiting Time Penalties | $677,988 |
| Attorneys' Fees (20% of the above claims' sub-total) | $1,697,542.84 |
| TOTAL | $10,185,257.04 |

89.     As such, on the grounds that this potential class action involves a putative class far exceeding 100 members, that minimal diversity is satisfied, and that the amount in controversy far exceeds the required sum of $5,000,000.00, exclusive of interests and costs, original jurisdiction over this matter exists pursuant to CAFA.  28 U.S.C. § 1332(d)(2).

**V.**

**<u>CONCLUSION</u>**

90.     Based on the foregoing, this Action may be removed on the grounds of individual diversity jurisdiction, 28 U.S.C. §1332(a), and pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).


Dated:  September 15, 2025          **DLA PIPER LLP (US)**

By:  *_/s/Mary C. Dollarhide_*
          MARY C. DOLLARHIDE
          TAYLOR WEMMER
          JOSEPH J. KIM


          *Attorneys for Defendant*
          AMN SERVICES, LLC